**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**MELANIE GARAY,**

Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, and Higher Education Loan Authority of the State of Missouri, d/b/a MOHELA,**

Defendants.

Case No.:

---

**PLAINTIFF'S COMPLAINT**

**JURY DEMAND**

Plaintiff, Melanie Garay (hereinafter "Plaintiff" or "Ms. Garay"), brings this action against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, the "credit reporting agencies" or "CRAs"), and against Defendant Higher Education Loan Authority of the State of Missouri, d/b/a MOHELA ("MOHELA", the

"Furnisher Defendant"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (hereinafter the "FCRA").

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

2. Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be hailed into a Florida court. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

3. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claim occurred in Hillsborough County, Florida, where Plaintiff resides. Assignment to the Tampa Division is proper under Local Rule 1.04 because the claim arose and Plaintiff resides in Hillsborough County.

## PARTIES

4. Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Hillsborough County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

5. Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Equifax is a limited liability company incorporated under the

laws of the State of Delaware that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

6. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Experian is an Ohio corporation incorporated under the laws of the State of Delaware that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

7. Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois, that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681d to third parties.

8. Defendant Higher Education Loan Authority of the State of Missouri, d/b/a MOHELA ("MOHELA") is a public instrumentality of the State of Missouri, with a business address of 633 Spirit Drive, Chesterfield, Missouri 63005, that services federal student loans. MOHELA regularly furnishes information relating to consumers to

consumer reporting agencies and is a "furnisher of information" within the meaning of 15 U.S.C. § 1681s-2.

9. Defendants use instrumentalities of interstate commerce for the purpose of furnishing and exchanging information concerning consumers, which instrumentalities are largely electronic, written, or telephonic communications that have effects on consumers and their credit reports within the State of Florida.

## STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT

10. The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

11. Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. § 1681(a)(1).

12. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his

file; he has a right to see that the information is kept confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy. The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

13. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. § 1681s-2.

14. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3), (4).

15. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transaction Act ("FACTA"), Pub. L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

16. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies

("CRAs," and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any differently than a regular dispute.

17. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

18. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation, or the consumer obtained goods, services, or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. § 1681c-2(c)(2).

19. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

20. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i)).

21. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

22. The FCRA requires that if a consumer disputes any item of information contained in their credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the

item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

23. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

24. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C. § 1681i(a)(2)(A).

25. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall … (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681i(a)(5)(A)(i), (ii).

26. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a). If the violation is willful, the consumer may

recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a). A consumer who succeeds on an FCRA action is also entitled to recover costs and reasonable attorneys' fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

27. The FCRA provides a private right of action against any person that violates the provisions of the FCRA. See 15 U.S.C. §§ 1681o, 1681n.

28. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. § 1681s-2(b), must conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

29. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D). To comply, Trans Union, Equifax, and Experian developed and implemented a browser-based software system, commonly known as e-OSCAR (Online Solution for Complete and Accurate Reporting), that allows the CRAs to electronically notify furnishers of disputed credit reporting information via an Automated Credit Dispute Verification ("ACDV"), and for

furnishers to respond to such disputes following their investigation. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

30. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

## FACTUAL ALLEGATIONS

### I. Background Information

31. Plaintiff is the victim of identity theft and fraudulent student loan reporting appearing on her consumer credit file. Unauthorized third parties unlawfully used Plaintiff's personal information to open two fraudulent student loan tradelines with MOHELA, both dated November 20, 2025, sharing a common account number root of 242848XXXX, with reported balances of approximately $875 and $1,508 (reflected in certain records reviewed by Plaintiff as $1,519), which Plaintiff never applied for, signed for, authorized, or benefited from.

32. The accounts were opened using a fraudulent mailing address, PO Box 8931, Redlands, California 92375-2131, and fraudulent telephone numbers, including

(863) 328-6389, (727) 424-3668, and (220) 871-8714, none of which belong to or have ever been used by Plaintiff.

33. Plaintiff reported the identity theft to law enforcement and to the Federal Trade Commission. Plaintiff filed a Federal Trade Commission ("FTC") Identity Theft Report dated December 30, 2025, assigned report number 195569995, and lodged a police report with the Hillsborough County Sheriff's Office on or about January 8, 2026, assigned case number 26-27145.

34. The FTC Identity Theft Report and the police report each constitute an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

35. Plaintiff thereafter submitted written dispute letters to the credit reporting agencies by mail. In each written dispute, Plaintiff identified the specific fraudulent items, stated that they resulted from identity theft and did not relate to any transaction by Plaintiff, enclosed or referenced proof of her identity together with her FTC Identity Theft Report and police report, and requested deletion of the fraudulent information and, pursuant to 15 U.S.C. § 1681c-2, that the agency block the fraudulent information. Each written dispute was delivered to the respective agency as set forth below.

**<u>II. Disputes with Experian</u>**

36. On or about December 23, 2025, Plaintiff opened a dispute directly through Experian's consumer portal regarding the MOHELA tradeline. Experian acknowledged the dispute and represented that its investigation would be completed by January 14, 2026. Experian failed to delete or correct the disputed tradeline by that date or at any time thereafter, and the tradeline continued to be reported on Plaintiff's subsequent consumer disclosures.

37. Plaintiff mailed a further dispute letter to Experian, which was duly received by Experian on March 4, 2026, disputing the fraudulent address, the fraudulent telephone number, and the MOHELA tradelines, and identifying Plaintiff as a victim of identity theft with supporting documentation.

38. On or about March 11, 2026, Experian responded in writing declining to block the disputed information, asserting that it had determined either that the block request was made in error, was based on a material misrepresentation, or that Plaintiff knew or should have known she had obtained goods, services, or funds through the disputed transactions – conclusions for which Experian had no reasonable basis in light of Plaintiff's identity theft report and police report bearing a law-enforcement case number. See Osada, 2012 WL 1050067, at *3.

39. Upon reviewing a subsequent Experian credit report dated April 7, 2026, Plaintiff found that the fraudulent address and the fraudulent telephone number had

been deleted – confirming that Experian itself recognized those items as products of fraud – yet both MOHELA tradelines had been verified by Experian and continued to be reported.

**III. Disputes with Equifax**

40. Plaintiff mailed a dispute letter to Equifax, which was duly received by Equifax on March 2, 2026, disputing the fraudulent telephone number and the MOHELA tradelines and identifying Plaintiff as a victim of identity theft. To date, Plaintiff has not received any substantive written response from Equifax regarding this dispute.

41. Upon reviewing a subsequent Equifax credit report dated April 7, 2026, Plaintiff found that the disputed telephone number had been deleted; however, both MOHELA tradelines had been verified by Equifax and continued to be reported.

**IV. Disputes with Trans Union**

42. Plaintiff mailed a dispute letter to Trans Union, which was duly received by Trans Union on March 2, 2026, disputing the fraudulent address, the fraudulent telephone numbers, and the MOHELA tradelines and identifying Plaintiff as a victim of identity theft. To date, Plaintiff has not received any substantive written response from Trans Union regarding this dispute.

43. Upon reviewing a subsequent Trans Union credit report dated April 7, 2026, Plaintiff found that the fraudulent address, all three disputed telephone numbers – (863) 328-6389, (727) 424-3668, and (220) 871-8714 – and both MOHELA tradelines had been verified by Trans Union and continued to be reported, notwithstanding Plaintiff's identity-theft documentation.

## V. The Furnisher Defendant's Failure to Investigate

44. MOHELA furnished the fraudulent tradelines to Equifax, Experian, and Trans Union. After Plaintiff disputed those tradelines, each CRA notified MOHELA of the dispute, upon information and belief by transmitting an ACDV to MOHELA through the e-OSCAR system.

45. Upon receiving notice of the disputes – including notice that Plaintiff was a documented victim of identity theft – MOHELA verified the disputed tradelines as accurate to each CRA, or otherwise failed to correct or delete them, and reported that result back to Equifax, Experian, and Trans Union, notwithstanding that the accounts were fraudulent and did not belong to Plaintiff.

## VI. Pattern of Noncompliance and Plaintiff's Injuries

46. The credit reporting agencies' selective treatment of Plaintiff's disputes – deleting the fraudulent address and telephone numbers that they accepted as resulting from identity theft, while simultaneously verifying the MOHELA

tradelines identified as resulting from the same identity theft, supported by the same FTC Identity Theft Report and police report – demonstrates that the CRAs failed to conduct reasonable reinvestigations and failed to follow reasonable procedures to assure maximum possible accuracy.

47. Defendants' derogatory and inaccurate reporting of the MOHELA tradelines on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score, and credit worthiness to existing and potential creditors.

48. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583 (7th Cir. 2016); Santangelo v. Comcast Corp., 162 F. Supp. 3d 691 (N.D. Ill. 2016); Rothman v. U.S. Bank Nat'l Ass'n, No. 13-03381, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014); Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017); Coulbertson v. Experian Info. Sols., Inc., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017).

49. As a result of Defendants' conduct, including the continued publication of inaccurate information concerning the MOHELA tradelines, Plaintiff suffered concrete injuries, including emotional distress and manifestations of emotional distress associated with fraudulent information remaining in her credit files, damage to her reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes, and the deprivation of her statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See Coulter v. Sagestream, LLC, 501 F. Supp. 3d 298 (2020); Norman v. Trans Union, LLC, 669 F. Supp. 3d 351 (2023); Chaitoff v. Experian Information Solutions, Inc., 79 F.4th 800 (2023).

## CAUSES OF ACTION

### COUNT I – Violation of 15 U.S.C. § 1681e(b) (Against Defendant Experian)

50. Plaintiff incorporates by reference paragraphs 1 through 4, 6, 9, 10 through 30, 31 through 35, 36 through 39, and 46 through 49 as if fully stated herein.

51. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff,

including by continuing to report the fraudulent MOHELA tradelines as accurate after deleting other, related fraudulent identifying information tied to the same identity-theft dispute.

52. Experian's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT II – Violation of 15 U.S.C. § 1681i (Against Defendant Experian)**

53. Plaintiff incorporates by reference paragraphs 1 through 4, 6, 9, 10 through 30, 31 through 35, 36 through 39, and 46 through 49 as if fully stated herein.

54. During the relevant time frame, Experian received Plaintiff's disputes which requested that the fraudulent MOHELA tradelines be corrected or removed from her credit file.

55. Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable reinvestigation, failing to consider all relevant information submitted by Plaintiff, and failing to correct, update, or delete the inaccurate MOHELA tradelines after receiving actual notice of the inaccuracies, including Plaintiff's identity theft report.

56. Experian's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT III – Violation of 15 U.S.C. § 1681c-2 (Against Defendant Experian)**

57. Plaintiff incorporates by reference paragraphs 1 through 4, 6, 9, 10 through 30, 31 through 35, 36 through 39, and 46 through 49 as if fully stated herein.

58. Plaintiff identified to Experian information in her file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of her FTC Identity Theft Report and police report, and stated that the information did not relate to any transaction by Plaintiff.

59. Experian violated 15 U.S.C. § 1681c-2 by refusing to block, within four business days of receipt, the reporting of the fraudulent MOHELA tradelines that Plaintiff identified as resulting from identity theft, on grounds for which Experian had no reasonable basis. See Osada, 2012 WL 1050067, at *3.

60. Experian's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**<u>COUNT IV – Violation of 15 U.S.C. § 1681e(b) (Against Defendant Equifax)</u>**

61. Plaintiff incorporates by reference paragraphs 1 through 4, 5, 9, 10 through 30, 31 through 35, 40 through 41, and 46 through 49 as if fully stated herein.

62. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff, including by continuing to report the fraudulent MOHELA tradelines as accurate after deleting other, related fraudulent identifying information tied to the same identity-theft dispute.

63. Equifax's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT V – Violation of 15 U.S.C. § 1681i (Against Defendant Equifax)**

64. Plaintiff incorporates by reference paragraphs 1 through 4, 5, 9, 10 through 30, 31 through 35, 40 through 41, and 46 through 49 as if fully stated herein.

65. During the relevant time frame, Equifax received Plaintiff's dispute which requested that the fraudulent MOHELA tradelines be corrected or removed from her credit file.

66. Equifax violated 15 U.S.C. § 1681i by failing to provide Plaintiff any substantive response to her dispute, failing to conduct a reasonable reinvestigation, failing to consider all relevant information submitted by Plaintiff, and continuing to report the MOHELA tradelines as verified despite Plaintiff's documented identity-theft claim.

67. Equifax's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT VI – Violation of 15 U.S.C. § 1681c-2 (Against Defendant Equifax)**

68. Plaintiff incorporates by reference paragraphs 1 through 4, 5, 9, 10 through 30, 31 through 35, 40 through 41, and 46 through 49 as if fully stated herein.

69. Plaintiff identified to Equifax information in her file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of her FTC Identity Theft Report and police report, and stated that the information did not relate to any transaction by Plaintiff.

70. Equifax violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent MOHELA tradelines that Plaintiff identified as resulting from identity theft.

71. Equifax's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT VII – Violation of 15 U.S.C. § 1681e(b) (Against Defendant Trans Union)**

72. Plaintiff incorporates by reference paragraphs 1 through 4, 7, 9, 10 through 30, 31 through 35, 42 through 43, and 46 through 49 as if fully stated herein.

73. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it publishes and maintains concerning Plaintiff, including by continuing to verify and report the fraudulent address, fraudulent telephone numbers, and fraudulent MOHELA tradelines notwithstanding Plaintiff's identity-theft documentation.

74. Trans Union's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT VIII – Violation of 15 U.S.C. § 1681i (Against Defendant Trans Union)**

75. Plaintiff incorporates by reference paragraphs 1 through 4, 7, 9, 10 through 30, 31 through 35, 42 through 43, and 46 through 49 as if fully stated herein.

76. During the relevant time frame, Trans Union received Plaintiff's dispute which requested that the fraudulent address, telephone numbers, and MOHELA tradelines be corrected or removed from her credit file.

77. Trans Union violated 15 U.S.C. § 1681i by failing to provide Plaintiff any substantive response to her dispute, failing to conduct a reasonable reinvestigation, failing to consider all relevant information submitted by Plaintiff, and continuing to verify and report every disputed item despite Plaintiff's documented identity-theft claim.

78. Trans Union's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by

law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT IX – Violation of 15 U.S.C. § 1681c-2 (Against Defendant Trans Union)**

79. Plaintiff incorporates by reference paragraphs 1 through 4, 7, 9, 10 through 30, 31 through 35, 42 through 43, and 46 through 49 as if fully stated herein.

80. Plaintiff identified to Trans Union information in her file that resulted from identity theft, provided proof of identity, provided an identity theft report in the form of her FTC Identity Theft Report and police report, and stated that the information did not relate to any transaction by Plaintiff.

81. Trans Union violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent address, telephone numbers, and MOHELA tradelines that Plaintiff identified as resulting from identity theft.

82. Trans Union's conduct was willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT X – Violation of 15 U.S.C. § 1681s-2(b) (Against Defendant MOHELA)**

83. Plaintiff incorporates by reference paragraphs 1 through 4-9, 10 through 30, 31 through 35, 36 through 43, 44 through 45, and 46 through 49 as if fully stated herein.

84. MOHELA is a furnisher of information under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

85. MOHELA violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes, in that it failed to review all relevant information provided by the CRAs, verified the fraudulent tradelines as accurate notwithstanding notice that Plaintiff was a documented victim of identity theft, and failed to timely communicate with the CRAs to block or delete the disputed tradelines.

86. As a result of MOHELA's violations of the FCRA, Plaintiff has been damaged. MOHELA negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o. Additionally, MOHELA committed a willful violation of the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681n(a).

87. Plaintiff is entitled to an award of prevailing-party attorneys' fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against MOHELA in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: 9/9/2026

Respectfully submitted,

SHARMIN & SHARMIN, P.A.
/s/ Eiman Sharmin
Eiman Sharmin, Esq.
eiman@sharminlaw.com
FBN: 0716391
830 North Federal Highway
Lake Worth Beach, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022
Attorneys for Plaintiff